# IN THE UNITED STATES DISTRICT COURT FOR THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

### *"IN ADMIRALTY"*

| | |
|---|---|
| LOREN KOKOT ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 2020-cv-25 |
| v. ) | |
| ) | |
| ST. JOHN FRONT DESK, LLC d/b/a ) | Action for Damages and Personal |
| WHARFSIDE WATERSPORTS, ) | Injury in Maritime |
| MICHAEL RAMSEY, CHASE HERRO, *in* ) | |
| *personam* and M/V CLICKBAIT, a 34' ) | |
| Sunsation CCX motor vessel, bearing U.S. ) | |
| Virgin Islands Registration No. VI-5442-TC ) | |
| With Coast Guard Primary Vessel No. CG- ) | |
| 1477609 with triple Mercury 350 ) | |
| horsepower outboard engines, her apparel, ) | |
| tackle, appurtenances, etc., *in rem.* ) | |
| ) | |
| ) | |
| *Defendants.* ) | |

## **VERIFIED COMPLAINT**

### **PARTIES**

1. Plaintiff, LOREN KOKOT ("Kokot"), is a citizen and resident of Pittsburgh, Pennsylvania.

2. Defendant, ST. JOHN FRONT DESK, LLC d/b/a WHARFSIDE WATERSPORTS ("Wharfside") is a limited liability company incorporated in the U.S. Virgin Islands with its principal place of business in St. John, U.S. Virgin Islands.

3. Defendant, MICHAEL RAMSEY ("Ramsey"), is a citizen and resident of St. John, Virgin Islands.

4. Defendant, CHASE HERRO ("Herro"), is, on information and belief, a citizen and resident of Loa Angeles, California.

5. Defendant, M/V CLICKBAIT ("Clickbait"), is a 34' Sunsation CCX motor vessel, bearing U.S. Virgin Islands Registration No. VI-5442-TC with and Coast Guard Primary Vessel No. CG-1477609 with triple Mercury 350 horsepower outboard

engines, her apparel, tackle, appurtenances, etc., which, on information and belief, is currently located "on the hard" in St. John, US Virgin Islands and will, during the pendency of these proceedings, be afloat or "on the hard" in St. John or St. Thomas during the pendency of the proceedings at all times within the jurisdiction of this Court.

## JURISDICTION

6. Plaintiff's claims against Defendants present an Admiralty or maritime case within the jurisdiction of the United States and this Honorable Court pursuant to Article III, section 2 of the U.S. Constitution, 28 U.S.C. §§ 1331 and 1333, and 46 U.S.C. §§ 30103, 30106.

7. Plaintiff invokes the maritime procedure specified in Federal Rule of Civil Procedure 9(h) and the Supplemental Rules for Certain Admiralty and Maritime Claims, particularly Rule C thereof.

8. Supplemental jurisdiction for Territorial law claims exists under 28 U.S.C. §§ 1333 and 1367(a).

9. Venue is proper in the District Court of the Virgin Islands as all or a substantial part of the events or omissions giving rise to this claim occurred in the United States Virgin Islands.

## NATURE OF THE ACTION

10. Herro was, at all times relevant, the owner of Clickbait.

11. Currently, and at all times relevant, Wharfside was in the business of chartering motor vessels for day excursions in the US Virgin Islands for trips within the U.S. Virgin Islands and the British Virgin Islands.

12. Wharfside held itself out as the owner and operator of various vessels, including Clickbait.

13. In April 2019, Steven Snyder, Plaintiff's brother-in-law, found Wharfside's website while searching for excursions for a family vacation to the territory.

14. On April 10, 2019, Mr. Snyder contacted Wharfside by phone and spoke with Justin Bartosh, a principal of Wharfside, who advised Mr. Snyder that he would need to rent two vessels for his St. John-to-British Virgin Islands excursion due to the number of guests.

15. Bartosh advised Snyder that Wharfside had two vessels, the m/v Poseidon and m/v Clickbait, which would be suitable for the charter.

16. Wharfside holds itself out as the owner of Clickbait describing it as "**our** Sunsation 34 CCX… ."

17. Bartosh/Wharfside quoted Snyder a price of $1200 for each boat plus extra for fuel, tips, and customs fees for the BVI.

18. On April 11, 2019, Snyder booked the vessels for Saturday June 15, 2019.

19. On or about morning of June 15, 2019, the charter boats were to pick up the guests, including Plaintiff Kokot, at the National Park Dock in St John at 9:00 a.m., but did not arrive on-time.

20. When the vessels did arrive, neither boat had snorkeling gear or the drinks which were arranged and the captains for each vessel (Nathan Fletcher for Poseidon and Defendant Michael Ramsey for Clickbait) seem to have little information about the charters .

21. Because the vessels had neither the drinks or the snorkel gear, the vessels then returned with the passengers aboard to the beach at Cruz Bay, St. John to retrieve the snorkel gear and drinks.

22. At no time did Captain Ramsey give any type of safety instructions or demonstration before getting underway on Clickbait.

23. In fact, none of the passengers received any safety instructions or demonstration before the vessels got underway.

24. Captain Ramsey did not advise any of the guests where to sit on the vessel Clickbait and, in particular, did not warn of the danger of sitting the bow of the vessel while underway.

25. Once the charters got underway and left the harbor, Clickbait was subjected to open water conditions with high winds and seas.

26. On center console boats, like Clickbait, the bow of the vessel presents the most danger for passengers while underway with the stern seating being the safest.

27. Plaintiff Kokot was not an experienced boater and was seated in the bow (or front) of Clickbait during the voyage.

28. Shortly after exiting the channel in Cruz Bay, Captain Ramsey steadily increased the speed of the vessel while heading into open water.

29. Captain Ramsey was operating Clickbait at a speed which was unsafe for the conditions, particularly with guests, like Plaintiff Kokot seated in the bow of the vessel, taking the brunt of the force of the swells.

30. Shortly after Captain Ramsey had increased his speed, he operated Clickbait headlong into a large wave which sent Plaintiff Kokot hurdling into the air and then slamming violently into the hull of Clickbait.

31. Plaintiff's sister, Kim Kelchner, yelled out in distress after watching her sister be thrown violently into the air.

32. Plaintiff Kokot was crying and screaming in pain and yelled out that her back was broken.

33. Plaintiff Kokot then began to pass out repeatedly from the pain and injuries.

34. Witnesses, including Steven Snyder observed Plaintiff Kokot passed out 3-4 times before the vessel reached shore.

35. Captain Fletcher on Poseidon called 911 to have St. John reserve meet the vessels at Maho beach.

36. Captain Fletcher and a vacationing nurse on Maho beach got on board the Clickbait to assist Plaintiff Kokot.

37. Plaintiff Kokot was ultimately placed on a backboard and secured thereto before being removed from the vessels and handed over the EMTs.

38. Other than taking Clickbait to Maho beach, Captain Ramsey provided no assistance to Plaintiff Kokot after she was injured.

39. As owner of the vessel, Chase Herro is explicitly responsible for any damages stemming from negligent operation of that vessel pursuant to 25 V.I.C. § 25/302.

40. As the master and operator of the vessel at the time of the incident, Defendant Ramsey is liable to Plaintiff for his negligence pursuant to 46 U.S.C. § 30103.

41. Defendant Ramsey had a duty to operate the vessel in a safe manner and to conduct the overall trip in a manner that ensured the safety of Plaintiff and the rest of the passengers.

42. At all times relevant Defendant Ramsey was acting an agent of Wharfside who retained him to captain Clickbait on the subject charter.

43. Defendant Ramsey, on behalf of himself and Wharfside, operated the vessel in a negligent manner, including, but not limited to operating the vessel at a rate of speed in excess which was safe for the water conditions, and failing to keep an adequate watch for high seas.

44. Defendant Ramsey operated the vessel in such a manner to cause Plaintiff Kokot to be thrown violently in the air and around the vessel when he struck a wave head-on, at a high rate of speed.

45. As a result of the negligent operation of the vessel, Plaintiff's body was hurled about the vessel, striking the deck and other hard surfaces, causing severe and permanent injuries.

46. Defendant Ramsey failed to operate the vessel in a safe manner, failed to operate the vessel at a safe rate of speed for the conditions, failed to give his guests, including Plaintiff Kokot safety instructions, failed to advise Plaintiff Kokot where to sit on the vessel while underway, and failed to advise of the danger of sitting in the bow of the vessel in the subject conditions, and failed to direct Plaintiff to sit in an area other than the bow of the vessel while underway.

47. As a result of the collective negligence of Defendants, Plaintiff suffered severe and life altering injuries, including, but not limited to, a burst fracture of her L-4 vertebrae necessitating spinal fusion surgery.

48. Plaintiff lives in constant pain as a result of her injuries, for which she will require medical treatment and intervention for the foreseeable future and for which Defendants are liable.

## **CLAIMS**

### **COUNT I**
*MARITIME LIEN AGAINST M/V CLICKBAIT*

49. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

50. At all times material, Plaintiff was on board the M/V CLICKBAIT while it was being operated in navigable waters.

51. While being operated in navigable waters, Plaintiff was injured by the negligence of the M/V CLICKBAIT.

52. The negligence of the M/V CLICKBAIT gives rise to a maritime lien in favor of Plaintiff for damages suffered as a result of the maritime tort.

53. Pursuant to Supplementary Admiralty Rule C, Plaintiff prays that the Court:

    a. immediately issue a warrant for the arrest of the M/V CLICKBAIT;

    b. notify all persons claiming any interest in the M/V CLICKBAIT and order them to appear and answer the matters aforesaid;

    c. enter judgment *in rem* against the M/V CLICKBAIT in favor of Plaintiff for the full value of the M/V CLICKBAIT;

    d. award to plaintiff court costs, and other costs reasonably incurred in this action (including but not limited to fees for substitute custodian, dockage, and insurance required by the U.S. Marshal Service);

    e. enter judgment declaring that plaintiff has a valid and existing maritime lien on the M/V CLICKBAIT for the full value of the M/V CLICKBAIT , which is senior to any other liens or claims whatsoever, except any preferred maritime liens which may be asserted against the M/V CLICKBAIT and so proved in this action, and granting plaintiff a judgment in rem against the M/V CLICKBAIT; together with other costs reasonably incurred in this action (including but not limited to fees for substitute custodian, dockage, and insurance required by the U.S. Marshal Service);

    f. order that the M/V CLICKBAIT be sold by the U.S. Marshal to pay and satisfy said judgment in full, subject to valid and existing preferred liens; and

    g. award such other and further relief as the court deems just and proper.

## COUNT II
*NEGLIGENCE AND NEGLIGENCE PER SE*
As to Front Desk, LLC d/b/a Wharfside Watersports

54. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

55. Wharfside owed Plaintiff a duty of care including providing safe excursion for Plaintiff and the other guests. the operation of the subject vessel.

56. The actions of Wharfside constituted a breach of its respective duties to Plaintiff resulting in serious and permanent injuries.

57. Wharfside owed a non-delegable duty of reasonable care under the circumstances for the health, welfare, and safety of those passengers participating in the subject excursion.

58. The actions and inactions of Wharfside constitute negligence, including, but not limited to:

    a. Failing to provide a safe vessel excursion;

    b. Failing to ensure the vessel/operator held proper liability insurance;

    c. Permitting an excursion to take place in unsafe conditions;

d. Failing to ensure that the passengers were aware of all foreseeable risks;

e. Failing to ensure that the passengers were given safety instructions and demonstrations prior to the voyage;

f. Failing to adequately train, monitor, and supervise the subject excursion;

g. Failing to exercise reasonable care under all of the circumstances;

h. Failing to comply with local and federal statutory regulations;

i. Failing to implement policies, procedures and crew training to ensure passenger safety on transporting passengers;

j. Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, immobilizing passengers who have suffered back, neck, spin injuries while aboard its vessels;

k. Failing to exercise reasonable care under all of the circumstances;

l. Failing to contact emergency services from the vessel to secure safe disembarkation from the vessel;

m. Failing to procure a "spine board" to safely secure Plaintiff's safe disembarkation from the vessel;

n. Failing to carry coastguard-required safety equipment;

o. Failing to use the radio in a prompt and proper manner;

p. Failing to ensure that the captain and the crew were properly trained and licensed to operate the vessel;

q. Failing to properly train the captain/crew in the proper and safe operation of the vessel;

r. Permitting an untrained and/or unqualified individual to operate the vessel;

s. Failing to provide agents with effective safety policies and procedures;

t. Failing to properly oversee the crew;

u. Failing to correct conditions of un-seaworthiness of their vessel;

      v. Failing to have a competent crew piloting the vessel;

      w. Failing to comply with local and federal statutory regulations.

59. The Virgin Islands and the U.S. Congress have written legislation to ensure the safety of persons traveling on motor vessels on navigable waters.

60. These statutes impose an affirmative duty on persons/entities generally operating or owning a sea-going vessel.

61. Plaintiff was persons within the "zone of interest" for the legislation discussed herein.

62. The acts and omissions of Wharfside, including, but not limited to, their failure, collectively or individually, to operate the vessel in a non-negligent manner, failing to maintain the vessel including navigational equipment, failing to ensure safe operation of the vessel, and failing to report Plaintiff's injuries, were all done in negligently and in violation of local and federal law.

63. As a result of the foregoing, Plaintiff suffered severe and life-altering injuries for which Wharfside is liable.

## COUNT III
*NEGLIGENCE AND NEGLIGENCE PER SE*
As to Michael Ramsey

64. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

65. Defendant Ramsey owed Plaintiff a duty of care including providing safe excursion for Plaintiff and the other guests while operating the subject vessel.

66. The actions/inactions of Ramsey constituted a breach of his respective duties to Plaintiff resulting in serious and permanent injuries.

67. The actions and inactions of Ramsey constitute negligence, including, but not limited to:

      a. Failing to provide a safe vessel excursion;

      b. Failing to ensure the vessel/operator held proper liability insurance;

      c. Permitting an excursion to take place in unsafe conditions;

      d. Failing to ensure that the passengers were aware of all foreseeable risks;

e. Failing to ensure that the passengers were given safety instructions and demonstrations prior to the voyage;

f. Failing to adequately train, monitor, and supervise the subject excursion;

g. Operating a motor vessel in a negligent manner;

h. Operating the motor vessel in a manner unsafe for the subject ocean conditions;

i. Failing to exercise reasonable care under all of the circumstances;

j. Failing to keep a proper watch for sea conditions;

k. Failing to observe the degree of care, precaution, and vigilance which the circumstances demanded;

l. Failing to properly navigate the subject vessel to avoid striking large swells head-on at high speeds;

m. Failing to comply with local and federal statutory regulations;

n. Failing to implement policies, procedures and crew training to ensure passenger safety on transporting passengers;

o. Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, immobilizing passengers who have suffered back, neck, spin injuries while aboard the vessel;

p. Operating a motor vessel in a careless, reckless, and negligent manner;

q. Operating the motor vessel in a manner unsafe for the subject ocean conditions;

r. Failing to exercise reasonable care under all of the circumstances;

s. Failing to contact emergency services from the vessel to secure safe disembarkation from the vessel;

t. Failing to carry coastguard-required safety equipment;

u. Failing to use the radio in a prompt and proper manner;

v. Failing to properly oversee the crew;

w. Failing to comply with local and federal statutory regulations;

    x. Failing to warn Plaintiff of the dangers of sitting the bow while underway;

    y. Failing to direct Plaintiff to a safe area of the vessel while underway;

68. The Virgin Islands and the U.S. Congress have written legislation to ensure the safety of persons traveling on motor vessels on navigable waters.

69. These statutes impose an affirmative duty on persons/entities generally operating or owning a sea-going vessel.

70. Plaintiff was persons within the "zone of interest" for the legislation discussed herein.

71. The acts and omissions of Ramsey, including, but not limited to, the failure to operate the vessel in a non-negligent manner, failing to ensure safe operation of the vessel, failing to warn, and failing to report Plaintiff's injuries, were all done in negligently and in violation of local and federal law.

72. As a result of the foregoing, Plaintiff suffered severe and life-altering injuries for which Ramsey liable.

## **COUNT III**
*NEGLIGENCE AND NEGLIGENCE PER SE*
<u>As to Chase Herro</u>

73. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

74. Defendant Chase Herro owed Plaintiff a duty of care including providing safe excursion for Plaintiff and the other guests. the operation of the subject vessel.

75. The actions of Chase Herro constituted a breach of his respective duties to Plaintiff resulting in serious and permanent injuries.

76. The actions and inactions of Chase Herro constitute negligence, including, but not limited to:

    a. Failing to provide a safe vessel excursion;

    b. Failing to ensure the vessel/operator held proper liability insurance;

    c. Permitting an excursion to take place in unsafe conditions;

    d. Failing to ensure that the passengers were aware of all foreseeable risks;

    e. Failing to ensure that the passengers were given safety instructions and demonstrations prior to the voyage;

 f. Failing to adequately train, monitor, and supervise the subject excursion;

 g. Failing to exercise reasonable care under all of the circumstances;

 h. Failing to comply with local and federal statutory regulations;

 i. Failing to implement policies, procedures and crew training to ensure passenger safety on transporting passengers to and from dives;

 j. Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, immobilizing passengers who have suffered back, neck, spin injuries while aboard its vessels;

 k. Failing to exercise reasonable care under all of the circumstances;

 l. Failing to contact emergency services from the vessel to secure safe disembarkation from the vessel;

 m. Failing to procure a "spine board" to safely secure Plaintiff's safe disembarkation from the vessel;

 n. Failing to carry coastguard-required safety equipment;

 o. Failing to use the radio in a prompt and proper manner;

 p. Failing to ensure that the captain and the crew were properly trained and licensed to operate the vessel;

 q. Failing to properly train the captain/crew in the proper and safe operation of the vessel;

 r. Permitting an untrained and/or unqualified individual to operate the vessel;

 s. Failing to provide agents with effective safety policies and procedures;

 t. Failing to properly oversee the crew;

 u. Failing to correct conditions of un-seaworthiness of their vessel;

 v. Failing to have a competent crew piloting the vessel;

    w. Failing to ensure proper distribution of the weight of items on the vessel to ensure safe travel over open seas;

    x. Failing to comply with local and federal statutory regulations.

77. The Virgin Islands and the U.S. Congress have written legislation to ensure the safety of persons traveling on motor vessels on navigable waters.

78. These statutes impose an affirmative duty on persons/entities generally operating or owning a sea-going vessel.

79. Plaintiff was persons within the "zone of interest" for the legislation discussed herein.

80. The acts and omissions of OWNER, including, but not limited to, the failure to operate the vessel in a non-negligent manner, failing to ensure safe operation of the vessel, and failing to report Plaintiff's injuries, were all done in negligently and in violation of local and federal law.

81. As a result of the foregoing, Plaintiff suffered severe and life-altering injuries for which OWNER is liable.

## COUNT IV
### *NEGLIGENT ENTRUSTMENT*
### As to Chase Herro and Front Desk, LLC d/b/a Wharfside Watersports

82. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

83. Wharfside and Chase Herro, had a legal duty to properly and adequately inspect, investigate, screen, select, and retain those individuals whom they entrusted with the safety and care of the participants in the subject shore excursion.

84. Wharfside and Chase Herro, further had a legal duty to exercise reasonable care to properly monitor, supervise, and oversee the individuals, including, Ramsey, to whom they entrusted the safety of the participants of the subject excursion.

85. Wharfside and Chase Herro, breached the above-described duties owed to Plaintiff by:

    a. Failing to ensure Ramsey was operating a vessel which carried commercial liability insurance;

    b. Entrusting a vessel to person whom Defendants knew, or should have known, was not competent to operate a motor vessel in a safe and prudent manner;

    c. Failing to ensure that Ramsey would give proper safety briefings and demonstrations to guests, including Plaintiff, before starting the voyage;

    d. Failing to ensure that passengers, including Plaintiff, were made aware of the perils of sitting in the bow of the vessel in rough conditions;

    e. Failing to ensure that Ramsey was otherwise fit to be entrusted with the safety of the participants in the subject excursion;

    f. Failing to properly monitor, supervise, and oversee the individuals, including Ramsey, to whom they entrusted the safety of the participants of the subject shore excursion, and

    g. In other manners not yet known at the present time, but which will be uncovered in discovery.

86. Wharfside and Chase Herro, knew or through the exercise of reasonable care should have known, of the unfitness of Ramsey operating the excursion on the date of the subject accident.

87. Chase Herro was further negligent in entrusting the vessel to Wharfside when he knew that Wharfside did not carry liability insurance and did not vet the captains it provided for the vessels in its rental fleet.

88. As a direct and proximate result of Wharfside's and Chase Herro's negligence, Plaintiff suffered bodily injury including a permanent injury to the body as a whole, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, aggravation of an existing condition, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and loss of ability to lead and enjoy a normal life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT IV

*VIOLATION OF GENERAL MARITIME LAW*
As to all Defendants

89. Plaintiff hereby incorporates all previous paragraphs as if repeated fully herein.

90. As a direct and proximate result of negligence, of Defendants, Plaintiff suffered severe and life altering injuries.

91. Defendants, at all times material hereto, had a duty exercise due care for the safety of Plaintiff and had a duty of care to properly maintain, operate and navigate the vessel which defendants owned and/or operated.

92. The injuries to Plaintiff were not caused or contributed by to any fault or negligence of Plaintiff but were caused solely by and due wholly to Defendants' negligence and violation of established navigation rules.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment be entered in favor of Plaintiff and against Defendants, jointly and/or severally, and that Plaintiff be awarded the following:

   a. Compensatory damages;

   b. Reimbursement of past medical costs/expenses;

   c. Future medical costs/expenses;

   d. Lost past earnings and diminished earning capacity;

   e. Lost or diminished future earnings;

   f. Damages for pain and suffering and loss of enjoyment of life;

   g. Any other such relief that is warranted.

Date:   March 9, 2020                    The Cattie Law Firm, P.C.

                                         By: /s/ David J. Cattie, Esq.
                                             DAVID J. CATTIE, ESQ.
                                             V.I. Bar No. 964
                                             1710 Kongens Gade
                                             St. Thomas, Virgin Islands 00802
                                             Telephone: 340.775.1200
                                             Facsimile:  800.878.5237
                                             david.cattie@cattie-law.com

By: /s/ David J. Cattie, Esq.
DAVID J. CATTIE, ESQ.
V.I. Bar No. 964
1710 Kongens Gade
St. Thomas, Virgin Islands 00802
Telephone: 340.775.1200
Facsimile: 800.878.5237
david.cattie@cattie-law.com

## VERIFICATION

PERSONALLY APPEARED before me LOREN KOKOT who, under penalty of perjury, deposes and says:

a) My name is LOREN KOKOT, and I am the Plaintiff in this action.

b) I have read the foregoing Verified Complaint and know the contents thereof and the same are true and correct to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matters I believe them to be true.

c) The sources of my information and the grounds of my belief are my personal knowledge and the documents reviewed by me in the course of investigating this matter.

*Loren Kokot*
LOREN KOKOT

SWORN TO AND SUBSCRIBED before me this 9th day of MARCH, 2020, by LOREN KOKOT, who is personally known to me or has produced DRIVER'S LICENSE as identification.

*Kenneth A. McCarrell*
NOTARY PUBLIC

My Commission Expires:

Commonwealth of Pennsylvania - Notary Seal
Kenneth A. McCarrell, Notary Public
Allegheny County
My commission expires July 7, 2023
Commission number 1234583
Member, Pennsylvania Association of Notaries